DANA HUESTIS AND LORA J. HUESTIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huestis v. Commissioner
Docket No. 13629-89.
United States Tax Court
T.C. Memo 1992-159; 1992 Tax Ct. Memo LEXIS 162; 63 T.C.M. (CCH) 2443; T.C.M. (RIA) 92159; March 19, 1992, Filed *162 Decisions will be entered for respondent. John R. Kline and William G. Baucus, for petitioners. Jay M. Erickson, for respondent. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR , Judge: Respondent determined deficiencies in petitioners' Federal income tax of $ 15,334 in tax year 1984 and $ 13,822 in tax year 1985. The deficiencies arise out of respondent's denial of petitioners' investment credits. The sole issue is whether petitioners are entitled to their claimed investment credits on a grain storage facility and a Caterpillar tractor in tax years 1984 and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Great Falls, Montana, when they filed the petition in this case. Elva and John Zoller are the parents of petitioner Lora Huestis and the original proprietors of Zoller Farms, which has been in business since 1942. Edgar Cooper was one of the original landlords whose land Elva and John Zoller farmed as tenants. After Edgar Cooper died in the 1950's, the Zollers continued to farm the Cooper land for Cooper's *163 heirs. Since 1978, Zoller Farms has farmed 6,403 acres of land. Except for petitioners' lease, which we will discuss in detail below, none of the landowners had a formal agreement with Zoller Farms to farm their land. The landowners chose to continue to have Zoller Farms farm their land on a year-by-year basis. The land farmed by Zoller Farms is owned as follows: Petitioners
960 acres
Falls Construction Co.
420 acres
Elva Zoller
146 acres
Zoller Trusts [1]
2,024 acres
Tom Berkner-undivided interest
317 acres
William and James Meaney-undivided interest
237 acres
John Loy Trust
1,235 acres
Dick Bogden
110 acres
Carle Mehmke
65 acres
Great Falls Gas Co.
41 acres
Irma Johnson
604 acres
Gloria Pedersen
244 acres
In 1948, Mr. Heinie Helseth began working for John Zoller. Mr. Helseth has lived on the farm since 1948 and was 80 years old at the time of this litigation. Following John Zoller's *164 death in 1967, Mr. Helseth managed all of the field work for Zoller Farms and continued working for Elva Zoller as an informal partner. On November 9, 1977, Elva Zoller and Mr. Helseth entered into a written partnership agreement. The beginning of the partnership agreement provides: WHEREAS, the parties have for a number of years operated a farming and ranching business east of Great Falls, Montana, and under the name and style of Zoller Farms, with Elva Zoller contributing the use of certain lands and equipment and Heinie Helseth contributing business management and operation; and WHEREAS, the parties have heretofore operated as partners and wish to amend their partnership agreement and thereby terminating previous agreements between them, NOW, THEREFORE, in consideration of the mutual promises covenants, IT IS MUTUALLY AGREED BY AND BETWEEN THE PARTIES HERETO as follows: 1. That the parties shall associate themselves together as partners and do business under the firm name and style of Zoller Farms. * * * 7. Heinie Helseth agrees to devote all of his time and attention to the operation and management of the farming operation, and Elva Zoller agrees to devote such time *165 and attention as may be necessary to maintain a complete set of books and accounts and advise with Heinie Helseth on what would be appropriate in the farming operation and what may be necessary in the furtherance of the business of the partnership.
In 1977, Falls Construction Co. purchased 420 acres of farmland from the Cooper heirs. Petitioner Dana Huestis is a 46-percent shareholder and the chief executive officer of Falls Construction Co. In 1978, petitioners borrowed $ 420,000 from the Federal Land Bank in order to purchase 960 acres of farmland from the Cooper heirs. Also in 1978, petitioners in their capacity as owners of their 960 acres entered into a ten-year written farm lease agreement with Elva Zoller, d.b.a. Zoller Farms, in her capacity as operator. In part the farm lease agreement provides: 3. RENTAL. Operator agrees to rent said premise subject to and in conformity with the terms and conditions herein and to pay Owners as rent therefor the sum of $ 31,700.00 per year for each year of the term of this lease, payable for the first lease year on or before February 1, 1980, and for each successive lease year on or before the 1st day of February following *166 such lease year. The foregoing rental is computed on the basis that the sum of $ 20,300.00 is a fair and reasonable estimate of what would be the return to Owners if the rental was one-third of the crops annually grown and harvested from said premises. Said sum is payable, however, whether or not one-third of the crops actually grown and harvested is less or more than said sum. The balance of the annual rental, in the sum of $ 11,400.00, is payable as and for rental for the use and occupancy of the buildings and other improvements upon said premises.
* * * 5. MANAGEMENT FEE. In addition to and at the same time the foregoing rental is payable, Operator agrees to pay to LORA JO HUESTIS each lease year the sum of $ 9,000.00 as and for management and consulting services in connection with Operator's farming operations, which services LORA JO HUESTIS agrees to provide and furnish.
6. FARMING OPERATIONS. Operator covenants and agrees: (a) That she will operate the farm in an efficient and workmanlike manner according to accepted practices in the community. (b) That she will furnish at her own cost and expense all seed, labor, tools, machinery, equipment, *167 fertilizer and weed spray requisite to the best farming of the land for the reasonable fulfillment of the covenants herein contained. (c) That she will care for the premises in the proper manner and use all reasonable diligence and care in caring for, protecting and preserving all crops raised upon the land. (d) That she will plant within the Normal Crop Acres (N.C.A.) as determined by the County A.S.C.S. office in which the land is located. Compliance with other Government programs shall be at the option of Operator.
The farm lease agreement was drafted by petitioner Dana Huestis' uncle, an attorney, for purposes of obtaining the loan from the Federal Land Bank. The bank wanted documentation to demonstrate petitioners' ability to repay the loan. The annual amount of funds flowing to petitioners under the lease was $ 20,300, $ 11,400, and $ 9,000, totaling $ 40,700, while petitioners' annual payments to the Federal Land Bank equaled $ 40,689. Petitioners were not always paid on time; occasionally they had to wait until sufficient crops were sold before Zoller Farms made the lease payments. Beginning in 1977 Elva stopped signing farm checks and paying farm bills. *168 In 1978, petitioners took over the management of Zoller Farms. During the years in issue, petitioner Lora Huestis operated a farm office in a room of petitioners' home, paid the farm bills, maintained the farm checking account and journal, and possessed a power of attorney for the landlords. Petitioner Lora Huestis received $ 9,000 annually from Zoller Farms for performing these "management and consulting" services. Petitioner Dana Huestis dealt mostly with the landowners and even sold some of their crops. He also took care of Zoller Farms' correspondence, insurance, and evaluated the farm equipment needs and maintenance. Petitioner Dana Huestis' services were not included in the management fee clause in the farm lease agreement even though he was involved in the management of the farm, because petitioners did not want Heinie Helseth to think he was being displaced in the operation of Zoller Farms. On June 27, 1979, Elva Zoller, in accordance with the conditions of petitioner's $ 420,000 loan, subordinated the farm lease to the Federal Land Bank. In 1983 petitioners refinanced their farmland loan and consolidated all of their banking business with Norwest Bank. In 1984 petitioners *169 decided to build a grain storage facility on their land, and went to Norwest Bank to borrow the money needed to build the facility. Around the same time, petitioner Dana Huestis prepared and petitioners executed a written document entitled "Addendum #1 to Farm Lease" with Elva Zoller d.b.a. Zoller Farms. The addendum in part provides: 1. DESCRIPTION OF PROPERTY. Owners hereby lease and let to the Operator to occupy and use for agricultural purposes a grain storage facility with a total capacity of 140,000 bushels, built in two phases.
* * * 3. RENTAL. Operator agrees to rent said premise subject to and in conformity with the terms and conditions herein and to pay Owners as rent therefore the sum of $ 17,500.00 for 1st phase of 70,000 bushels and $ 35,000.00 for 1st & 2nd phases of 140,000 bushels total, payable for the 1st phase by December 20, 1985, and for the 2nd phase by December 20, 1986. The annual rental payment thereafter shall be due by December 20 each year. Owners are to be responsible to pay all taxes and insurance. Owners to pay all major repairs. [sic] Allowance has been made in the rental price to reimburse Operator for miscellaneous maintenance *170 required to maintain facility in good working order.
Addendum #1 to Farm Lease was drafted to demonstrate a source of funds from which petitioners could repay their loan from Norwest Bank. The construction of the grain storage facility was completed in two stages. The first stage was completed in 1984 and cost $ 159,191. The second stage was completed in 1985 and cost $ 88,454. The amount of rent in the addendum was derived from commercial grain storage rates. Despite the terms of the addendum, Zoller Farms paid the taxes and petitioners paid the insurance on the grain storage facilities. In order to purchase a Caterpillar tractor for $ 94,000, petitioners once again went to Norwest Bank to borrow money. In 1985 petitioner Dana Huestis prepared and petitioners executed a written document entitled "Addendum #2 to Farm Lease" with Elva Zoller d.b.a. Zoller Farms. Addendum #2 to farm lease in part provides: 1. DESCRIPTION OF PROPERTY. Owners hereby lease and let to the Operator to use for agricultural purposes a Caterpillar D6D crawler tractor, serial number 5X1140. * * * 3. RENTAL. Operator agrees to rent said tractor subject to and in conformity with the *171 terms and conditions herein and to pay Owners as rent therefor the sum of $ 15,000.00 annually due by April 15 of each year beginning April 15, 1986. Owners are responsible to pay all taxes and insurance. Owners to pay all major repairs. [sic] Allowance has been made in the rental price to reimburse Operator for miscellaneous maintenance required to maintain tractor in good working order.
Addendum #2 to Farm Lease was also drafted to demonstrate a source of funds from which petitioners could repay their loan from Norwest Bank. Zoller Farms used the tractor on all of the acreage it farmed, including petitioners' 960 acres. Petitioners bought the storage facilities and the tractor because they felt it was not reasonable to ask Elva Zoller and Heinie Helseth, both in their mid-70's, to be involved in a capital expenditure of $ 350,000. Petitioners viewed the purchase as a logical part in perpetuating the family farm. Petitioners, on their 1984 individual tax return, claimed a $ 15,919 investment credit as a result of completion and placement into service of the first phase of the grain facility. Petitioners, on their 1985 individual tax return, claimed a $ 18,245 investment *172 credit as a result of completion and placement into service of the second phase of the grain facility and the placement into service of the Caterpillar tractor. Petitioners classified the lease payments received from Zoller Farms as rent income on Schedule E of their 1984 and 1985 tax returns. Petitioner Dana Huestis, as president of the Falls Construction Co. and through other endeavors, is well versed in business practice. He is also a past president of the Associated General Contractors of America and at the time of trial was the chairman of the Montana Highway Commission and a director of Norwest Bank. OPINION The issue for decision is whether petitioners are entitled to investment credits in tax years 1984 and 1985 for the grain storage facilities and the Caterpillar tractor. Taxpayers who purchase certain qualified property may be entitled to an investment credit. The investment credit is allowed under section 38(b)(1) [2] and determined under section 46. *173 Section 46(e) limits the availability of investment credits. Sec. 46(e) in pertinent part provides: (e) Limitations with Respect to Certain Persons. -- * * * (3) Noncorporate lessors. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.
Petitioners concede they do not meet the requirements of section 46(e)(3)(A) or (B), but argue they are not lessors subject to the section 46(e)(3) limitations. They contend that the documents entitled "Farm Lease", "Addendum #1 to Farm Lease", and *174 "Addendum #2 to Farm Lease" were executed merely to demonstrate a source of funds to repay the lender and do not govern the legal relationship between the parties. According to petitioners, the legal substance of their relationship with Zoller Farms was "more in the nature of joint venturers or partners or owners and agents, or part owners and managers, than landlord and tenant". Petitioners argue: It is Petitioners' position that they were managing joint venturers or managing partners in Zoller Farms with the so-called "Farm Lease" and Addendums being a guaranty that they could service their debt, the consideration for which was their promise to manage Zoller Farms and that the written agreements had meaning only as to the third parties who relied on them. In the alternative, it is submitted that the facts and surrounding circumstances demonstrate that Petitioners were hired to manage Zoller Farms, the consideration for which was Zoller Farms' guaranty of a cash amount in lieu of the traditional crop share, the payment of an amount for rental of their buildings, and a $ 9,000.00 management fee.
Accordingly, petitioners claim they are entitled to the investment credit *175 in their capacity as (1) managing general partners, or (2) managing joint venturers, or (3) operators, managers, agents and part owners of Zoller Farms. Alternatively, petitioners argue that if we find the addenda are in fact leases, then "to a substantial interest they were, if nothing else, both the lessor and the lessee". [3] Petitioners bear the burden of proof. Rule 142(a). Respondent argues that petitioners are noncorporate lessors of the grain storage facilities and the Caterpillar tractor, who conceded that they do not meet the noncorporate lessor requirements of section 46(e)(3), and accordingly, are not entitled to the investment credit. We agree with respondent. Petitioners want us to apply the doctrine of substance over form. In considering the substance of these transactions, the clarity of the lease and its addenda raises an issue *176 that neither party has directly addressed. This Court has applied a rule that "strong proof" must be adduced by a taxpayer if he or she seeks to establish a position at variance with the language of a written agreement to which he or she was a party. , affg. ; ; , affd. sub nom. . If the agreement has some "independent basis in fact or some arguable relationship with business reality," the taxpayer will be bound by the tax consequences apparent on the face of the agreement. ; . See also , and cases discussed therein. The Ninth Circuit, to which an appeal in this case would lie, has indicated that it might apply an even more stringent standard; namely, *177 precluding a taxpayer from challenging the tax consequences of an agreement that the taxpayer knowingly and voluntarily made, in the absence of fraud. ; . Petitioners do not meet our strong proof test or the stricter Ninth Circuit test. The addenda to the farm lease identify petitioners as the owners of the property and Elva Zoller d.b.a. Zoller Farms as the operator. The operator, Zoller Farms, agreed to lease the grain storage facilities and tractor for fixed amounts of rent. The addenda use the words "owner", "lease", and "rent". Petitioners testified on their own behalf and attempted to show the Court that neither party to the agreement treated it as a lease, citing that payments were sometimes delayed until crops were sold and Elva Zoller did not operate or manage Zoller Farms. In light of the clarity of the lease addenda, the fixed rental payments contained in the lease addenda, the $ 9,000 management and consulting agreement in the Farm Lease, petitioners' treatment of the payments *178 as rental income on their tax returns, and all the facts and circumstances of this case, we find petitioners have not provided "strong proof" for the Court to disregard the form of the written lease and addenda. Furthermore, petitioners' argument that the lease and addenda were merely executed for the purpose of obtaining financing indicates that the lease and addenda have some independent basis in fact and some arguable relationship with business reality; namely, the borrowing of money to finance the purchase of the grain storage facilities and the tractor. Elva's subordination of the lease highlights the business significance of the lease to the Federal Land Bank. Petitioners did not argue that there was any element of fraud with respect to the making of the lease and addenda. Notwithstanding petitioners' various theories, all of which we have considered, petitioners have nonetheless failed to adduce strong proof to convince us to ignore the form of the lease addenda. Neither have petitioners convinced us that the lease and addenda are lacking some basis in fact or some arguable relationship with business reality. And finally petitioners have not indicated the presence of fraud. *179 Therefore, petitioners are bound by the form of their lease agreement, and are subject to the limitations of section 46(e)(3). Decision will be entered for respondent. Footnotes
1. The beneficiaries of the Zoller Trusts are Elva Zoller, petitioner Lora Huestis, and her two children.↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Assuming arguendo that petitioners could be both a lessor and a lessee, they would nevertheless remain noncorporate lessors subject to the limitations of sec. 46(e)(3).↩